■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER JAMES, MICHAEL NORWOOD, ROBERT MARTIN and ANTHONY JOHNSON, Appellants. — Appeals by defendants from four judgments (one as to each of them) of the Supreme Court, Westchester County (Walsh, J.), rendered October 2, 1981 as to defendants Norwood and Martin, November 5, 1981 as to defendant James and November 10, 1981 as to defendant Johnson, convicting them each of attempted aggravated assault upon a peace officer, criminal possession of a weapon in the second degree (three counts), and criminal possession of stolen property in the first degree, upon a jury verdict, and imposing sentence. Defendant Johnson's appeal brings up for review the denial, following a hearing, of his motion to suppress certain statements, and the summary denial of his motion to suppress certain identification testimony. ¶ Judgments affirmed. ¶ At approximately 1:20 P.M. on September 23, 1980, defendants committed an armed bank robbery in Danbury, Connecticut and tried to make their escape through New York. Their planned escape route took them westbound on Interstate 84 to the first exit in New York and then southbound on Route 121. Westchester County Police Officer Ronald H. Wolken responded to a radio transmission advising him that the perpetrators were last seen heading toward New York in a yellow rental van. Officer Wolken positioned his patrol car near the exit ramp and tried to intercept the van as it headed southbound on Route 121. The van tried to avoid apprehension by weaving across both lanes of the highway for a short distance before it suddenly made an abrupt stop in the middle of the roadway. Wolken slammed on his brakes to avoid a collision and stopped approximately 15 feet from the rear of the van. ¶ As Wolken was exiting the patrol car, the rear doors of the van opened up, a handgun emerged and two shots were fired through the center portion of the front windshield of the car. Wolken managed to return fire through the rear of the van but he was forced to take cover in his patrol car when intense gun fire was aimed at him from both sides of the van. The van then proceeded down Route 121 and Wolken attempted to continue pursuit but the patrol car had become virtually immobilized by a bullet that struck the engine. Meanwhile, New York State Trooper William E. Kanehl approached the scene of the gunfire to assist Wolken. After making sure that Officer Wolken was uninjured Trooper Kanehl pursued the van at 55 to 60 miles per hour with his lights and siren on. ¶ The chase continued for approximately 20 miles as the van broke through a police roadblock before it finally crashed into a guardrail. Defendants James, Martin, and Norwood were apprehended in the van. ¶ During the chase, three guns used in the bank robbery and fired at Officer Wolken, plus the proceeds from the robbery and articles of clothing, were tossed out of the van onto the side of the road. At one curvy section of the road, a witness saw the van slow down as it nearly crashed. The witness also saw defendant Johnson run into the woods from the point where the van almost crashed. Johnson approached the witness at a nearby garage and demanded the keys to her car. The witness refused the demand but Johnson saw the keys in the ignition, got into the car and drove away. After leading numerous police vehicles on another high-speed chase, Johnson was apprehended after he crashed the stolen vehicle into a guardrail on the Cross County Parkway. ¶ After his arrest, Johnson received his *Miranda* warnings, acknowledged that he understood his rights and made inculpatory statements to the police.

Under the circumstances of this case we agree with the trial court's findings that Johnson's statements were voluntary and that there was no coercion, physical or mental. Accordingly, the court properly denied defendant Johnson's motion to suppress his statements after holding a *Huntley* hearing (see *People v Davis,* 55 NY2d 731). ¶ The evidence of guilt against all four codefendants is overwhelming, but we believe that one of defendant Johnson's contentions is worthy of discussion. The record indicates that Johnson attempted to waive his appearance at a felony hearing where he was identified by the witness whose car was stolen. Johnson contends that it was improper to compel his appearance at that hearing. Furthermore, Johnson moved to suppress identification testimony at trial by this witness on the ground that the procedures at the felony hearing were unduly suggestive and tainted the witness' testimony at trial. Finally, Johnson contends that it was improper to summarily deny his motion to suppress the witness' identification testimony. We conclude that Johnson should have been allowed to waive appearance at the felony hearing, and was entitled to a *Wade* hearing to determine the merits of his motion to suppress, but these errors were harmless as a matter of law. ¶ A defendant may, as a matter of right, be present at his trial (CPL 260.20) or at a felony hearing (CPL 180.60, subd 2). Since the statute codifying this right was enacted for the benefit of the defendant, it may be waived by him (*People v Chambliss,* 106 Misc 2d 342; see *People v Epps,* 37 NY2d 343, cert den 423 US 999). Although a motion to suppress is generally directed against overly suggestive police arranged procedures (see *People v Gissendanner,* 48 NY2d 543, 552), we note that a judicial hearing itself may also be highly suggestive (*People v Huggler,* 50 AD2d 471, 474). Since the prosecution is required to give notice of intent to use identification testimony by a witness who testified at a felony hearing (CPL 710.30, subd 3; see *People v Cruz,* 88 AD2d 621), it is only logical to give the defendant an opportunity to suppress tainted testimony by offering proof at an evidentiary hearing of undue suggestiveness (CPL 710.20, subd 5). However, the evidence at trial, including the fact that Johnson was apprehended shortly after he crashed the stolen car, and his statement to the police admitting that he took the car, was sufficient to demonstrate that there was no real issue as to Johnson's identification. Furthermore, the witness did not testify at the trial as to her identification of Johnson at the felony hearing, and she had ample opportunity, independent of her observation of Johnson at that hearing, to identify him as the person who had fled from the van and then had stolen her automobile. ¶ One noteworthy contention raised by each defendant involves purported prejudice caused by testimony regarding the uncharged bank robbery. The testimony was probative on the issues of identification and intent. It was admissible within the ambit of *People v Molineux* (168 NY 264). In our view, the probative value of the testimony clearly outweighed any potential prejudice, especially because the trial court excluded all references to the most inflammatory details about the bank robbery (see *People v Ventimiglia,* 52 NY2d 350; *People v Smalls,* 94 AD2d 777). ¶ Defendant Johnson claims that the trial court abused its discretion by refusing to preclude cross-examination regarding a prior larceny conviction (auto theft). Johnson ignores the fact that Judge Walsh demonstrated the exercise of discretion in precluding the use of a more serious prior conviction for armed robbery. In addition, the trial court did not abuse its discretion by permitting cross-examination as to the auto theft since such a crime "will usually have a very material relevance" on the question of credibility (*People v Sandoval,* 34 NY2d 371, 377). Furthermore, trial counsel did not take exception to the ruling he now objects to and thus did not preserve any claimed error (cf. *People v Mayrant,* 43 NY2d 236). ¶ We have reviewed all of the remaining contentions of each defendant. Although numerous, we conclude that none has substantive merit. Mollen, P. J., Gibbons, Thompson and Rubin, JJ., concur.